Per Curiam.

Defendant’s chief error assigned is that she was not given a fair and impartial trial by a fair, impartial and unprejudiced trial court, as is disclosed by “the record itself, and particularly the remarks, observations, warnings, and intimidations made by the trial court during the course of the hearing. ’ ’
The Court of Appeals, in its opinion, said:
‘ ‘ There is one matter in the consideration of this case, however, that did disturb us, and it still causes us concern in this review. That subject is the claim that the comment, on the part of the trial judge, as to his belief that certain witnesses were testifying falsely, and, more especially, the cross-examination by the trial judge of the defendant herein, deprived the defendant of a fair trial. That cross-examination, and the comments thereon, by the trial judge, took a total of 27 pages of this bill of exceptions.
“In the light of the pronouncement of the Supreme Court of Ohio in the case of State v. Lawrence, 162 Ohio St., 412, 123 N. E. (2d), 271, concerning the conduct of a trial judge, we were first inclined to the belief that the defendant was deprived of her constitutional right to a fair trial; but, upon a careful study of the matter, we do determine that the lengthy discussion by the trial judge with the defendant, Mrs. Surgeon, did not constitute bias or unfairness toward her. We must go on record, however, as being opposed to such conduct.”
The following quotations from the bill of exceptions are illustrative of the questions and remarks of the trial court during the examination of defendant.
While defendant was testifying as to seeing her husband in an automobile with other women, the court asked:
“The Court: What reason do you have to believe it? Are you more sure of him going with other women than you were sure whether that automobile looked like that picture after you *235 got through with it? You couldn’t say under oath that that automobile looked like you fixed it up. Now, you are saying under oath that you know he went with other women. Which are you surer?
“The Witness: I am sure that he did go.
“The Court: You are surer of that than you are of the automobile, are you, under oath?
“The Witness: Yes, I am.
“The Court: Uh huh. What proof have you got of it?
“The Witness: Well, I seen him twice on these two occasions. Then I seen his clothes and he had things in his pockets, 1 knew that.
“The Court: What things?
ti# # *
“The Court: Just tell us and quit arguing about it. You say you saw him once with a woman, and you are talking as if it happened every night. You are under oath, you understand.
( ( # # #
“The Court: I think you could see evil in church. I think you could see evil in church if you looked hard enough, couldn’t you? I don’t want your imagination here.
“The Witness: I am not telling you my imagination, sir. I am telling you the truth.
“The Court: It doesn’t sound like it to me.
“The Witness: All right.
“The Court: Go ahead.
“Q. (By Mr. Sheck) When was this, Mrs. Surgeon? A. It was between April sometime, the 25th.
“The Court: This husband of yours is not a fool, is he? Is he a fool, you claim that?
“The Witness: I would not claim that, no.
“The Court: You say he is acting like one. Just keep that in mind if you are going to fabricate any more. Tell a plausible story. ’’
Later, while testifying as to circumstances surrounding incidents when she had seen her husband with other women, the ' court interrupted:
“The Court: You don’t mean at his place.
“Q. (By Mr. Culbertson) I mean at the mother’s place. A. *236 Yes, I did, but there was only one time that I ever had reason to believe that he_ was having relationship with her, and that was the one time I related this morning, and I had hoped that I wouldn’t have to go into that.
“The Court: So your husband comes over there to his mother’s house, which is across the vacant lot from your house, where he used to live, and he, there,- with a woman, behaved in an unbecoming manner, is that what you want this court to believe ?
“The Witness: There is only a garden, sir. I am telling the truth. You are in a position to believe me or not.
“The Court: You want me to believe that he is imbecilic, he is such a fool, that if he were going to behave improperly with a woman, he’d bring her over there where you could see it.
“The Witness: Sir, he did not bring her over there, she came alone. He stayed at his mother’s home.
“The Court: He looked around and said, ‘Now, I’m a fool and it’s all right for me to misbehave right here where my wife can see.’
‘ ‘ The Witness: I don’t know what his mind went through. ’ ’
The court later.inquired of the defendant:
“The Court: Yes. You said that you wanted him to put the property in your name; where did you get that idea?
“The Witness: Because, if that was after I’d say the next summer after we were married, and I asked him to.
‘ ‘ The Court: Why ?
“The Witness: Because I think the husband and wife that has a home, the property should be in both of their names, sir.
“The Court: Well, who had this home?
“The Witness: He had the home when he married me.
“The Court: Yes. Where did you get the idea that it belonged to you?
“The Witness: I didn’t get the idea that it belonged to me. After all, he married me and I was under the impression that when two people was married—
“The Court: Well, how did he happen to marry you?
“The Witness: How did he happen to marry me? I married him because I loved him, that’s the reason I married him, the only reason, that I married him.
*237 “The Court: And you say that under oath?
“The Witness: Under oath, that is the_ only reason, your Honor that I married him, because I loved him.
“The Court: Do you love him now?
“The Witness: Not now, no.
i C # * #
“The Court: Well, I still haven’t heard from you your explanation why you think that the property should have been put in your name.
‘ ‘ The Witness: The only grounds I have for that is because I do think when two people are married that it should be a partnership, that is the only explanation I have for it, your Honor.
“The Court: And one contributing all, is that it? In partnership, both people contribute in equal amount.
“The Witness: Well, I had nothing of that sort, that is, a home of that value to give.
“The Court: You just thought that the man ought to give you half of what he owned, is that the idea?
“The Witness: I thought we should share it together.
“The Court: You mean what was his was yours, and what was yours was all your own.
“The Witness: No, sir.
CC# * *
“The Court: What are you blubbering about?
“The Witness: I’m sorry, I cannot help the condition of my throat.”
The court, after commenting on the defendant’s conduct in the courtroom, stated:
“Now, will you explain to me again where you got the idea that you had any right because you were married to the man for just six months, you had two children by a former marriage, that you should share equally with him in the ownership of his home; can you give me any reasonable solution for such a theory, because I have to judge you and him when I come to the ultimate matter of the determination of this case. If you have got any rationalizing that you can do, you better start to do it now.”
After a study of the foregoing excerpts, together with the entire record and especially the 27 pages of the bill of excep *238 tions containing the questions and comments of the trial court, this court is of the opinion that the defendant did not have a fair and impartial trial.
The judgment of the Court of Appeals is reversed, and the cause is remanded to the trial court for a new trial, on authority of State v. Lawrence, 162 Ohio St., 412, 123 N. E. (2d), 271.

Judgment reversed.

Weygandt, C. J., Matthias,. Hart, Zimmerman, Stewart, Bell and Taft, JJ., concur.